# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

UNITED STATES OF AMERICA,
    *Plaintiff*,

v.                                        Case No. 3:20-cr-00584-JFA

JENNIFER CORCORAN,
    *Defendant*.
_____/

## Sentencing Memorandum for Non-Custodial Sentence

Comes now, the defendant, Jennifer Corcoran, to respectfully ask the Court to impose a non-custodial sentence for this misdemeanor pursuant to 18 U.S.C. § 3553(a). The six primary grounds for this request are the following:

**1. Guidelines suggest a non-incarceration sentence for this misdemeanor offense.**

The guidelines calculation is 0-6 months for the misdemeanor to which Ms. Corcoran pled guilty. PSR, p. 12, paragraph 56. The low end of the guideline range is appropriate when considering all the sentencing factors, including that Ms. Corcoran is 42 years of age and has never before been arrested.[1]

**2. Government is not asking for incarceration for this misdemeanor offense.**

Significantly, it is the understanding of counsel that the government will not ask for a custodial sentence for Ms. Corcoran. Since Andrew Chmiel brought her into this case and was already cooperating with the case agents, Ms. Corcoran was in the unfortunate position of not being able to qualify for a substantial assistance downward departure. She did, however, agree

---

[1] 18 U.S.C. § 3553(a)(3-4). Ms. Corcoran's guideline range of 0-6 months falls into Zone A of the Sentencing Table. Zone A permits a probationary sentence. *See* USSG §5B1.1(a)(1).

1

to be interviewed by the agents prior to being charged. She provided a full and accurate debriefing including an admission to the charged offense. Her assistance saved the government valuable time and resources that could be devoted to other matters and shows that she is unlikely to reoffend.[2]

### 3. She was a bit player who was recruited and used by a trusted friend.

Ms. Corcoran was brought into this offense by Andrew Chmiel. Chmiel was her best friend who she trusted, loved, and thought she knew well. When he recruited her, Chmiel did not suggest to Corcoran that she would be a straw owner because Chmiel needed help in his illegal business venture. Rather, Chmiel explained that he needed her to run the store because the store was in disarray and that he needed someone in the store that he could trust to run it properly.

Corcoran believed Chmiel and remained unaware that she was being used by Chmiel. She viewed herself as the co-owner of the store who over time would take on more and more responsibilities as she learned the business. She relied on Chmiel and his office in making virtually every decision for the business. When she was instructed by a Chmiel associate to sign the Medicare Enrollment 855 form where she falsely claimed to be the sole owner, she signed it. This conduct is a sharp deviation from Corcoran's law-abiding life. Corcoran is ashamed and fully accepts responsibility for her actions. Counsel, however, is convinced that Corcoran is in

---

[2] *See U.S. v. Fernandez,* 443 F.3d 19 (2nd Cir. 2006) ("a sentencing judge… should take under advisement...that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure"); *see also Roberts v. United States*, 445 U.S. 552, 558 (1980) (defendant's cooperation demonstrates that the "defendant will transgress no more [and will] respond to rehabilitative efforts…[and] not deem himself at war with his society.")

front of this court for a criminal sentencing in large part because Chmeil used and manipulated her.

4. **The biggest player in conspiracy, who is a multi-millionaire, has negotiated a non-incarceration sentence for his role in the offense.**

Herb Kimble is a multi-millionaire living in the Philippines who was the leader of the billion-dollar Medicare Fraud conspiracy to sell the braces in violation of Medicare rules. He ran call centers, paid doctors for leads, and made millions of dollars from the criminal conspiracy. He negotiated a Rule 11(c)(1)(C) plea for probation that will terminate upon payment of $40 million in restitution. *See* Plea Agreement in 3:19-cr-277-JFA, doc. 11. The $40 million in restitution is likely a small amount of the profit that Kimble made in running the scheme.

This is not a criticism of the negotiation reached between the government and Kimball, who lived outside of the United States and provided extensive cooperation. Rather, assuming that a felony conviction with no incarceration and probation that terminates upon payment of restitution is appropriate for the person at the top of a billion-dollar fraud, then a non-custodial sentence should be appropriate for a minimal participant who is convicted of a misdemeanor. A non-custodial sentence for Corcoran will avoid any unwarranted disparity.[3]

---

[3] 18 U.S.C. § 3553(a)(6)(" the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."). *See also U.S. v. Jimenez-Gutierrez,* 491 F.3d 923 (8th Cir. 2007) (guideline sentence too harsh because did not account for fact that higher-ups in the conspiracy who had to exist (suppliers, etc.) deserved much more time).

5. **No prior criminal history and will live with the stain of this conviction on her record.**

Corcoran had never been arrested and is now a convicted criminal. The stigma resulting from her mistake is permanent.[4] *See* Attachment 1, character letters.

6. **Restitution in full will be paid at the sentencing.**

The government calculated the amount of restitution owed by Ms. Corcoran to be $80,073. Counsel has inquired about how to pay the amount prior to sentencing. It appeared that paying the amount on the day of sentencing was the most efficient way to satisfy the debt. Thus, Corcoran will bring a check with her to court and is prepared to pay the full amount of restitution at the time of sentencing.[5] Although there is no reason to assume that Corcoran will reoffend, the payment of restitution serves as a deterrent to criminal conduct.[6]

---

[4] *See U.S. v. Smith,* 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."). While the Ninth Circuit specifically addressed the stigma of a felony conviction, there is ample stigma and collateral consequences related to misdemeanor convictions as well.
[5] 18 U.S.C. § 3553(a)(7) ("the need to provide restitution to any victims of the offense.").
[6] 18 U.S.C. § 3553(a)(2)(b) ("to afford adequate deterrence to criminal conduct."). *See U.S. v. Edwards,* 595 F.3d 1004 (9th Cir. 2010)("the district judge recognized that restitution serves as a deterrent.").

**WHEREFORE**, for the reasons stated above, and for other good cause, counsel suggests that a non-custodial sentence is "sufficient but not greater than necessary" to punish Ms. Corcoran for this misdemeanor offense. Counsel further requests the Court to consider, consistent with a provision in Mr. Kimble's plea agreement, terminating probation upon payment in full of the restitution amount.

Respectfully submitted,

/s/ *Christopher W. Adams*
CHRISTOPHER W. ADAMS
S.C. Fed. Bar # 10595
171 Church Street, Suite 360
Charleston, SC 29401
Tel. 843.277.0090
Fax 877.883.9114
Email: adams.c@icloud.com

DATED: August 9, 2021

### CERTIFICATE OF SERVICE

    I hereby certify that on the above date this pleading was electronically served upon counsel filed with the Clerk of Court using the ECF system that will notify the parties of record in this case.

s/ *Christopher W. Adams*
Christopher W. Adams
S.C. Federal Bar No. 10595

*Counsel for Ms. Corcoran*